1  **BLUMENTHAL NORDREHAUG BHOWMIK**
   **DE BLOUW LLP**
2  Norman B. Blumenthal, Esq. (SBN #68687)
3  Kyle Nordrehaug, Esq. (SBN #205975)
   2255 Calle Clara
4  La Jolla, California 92037
   Telephone: (858) 551-1223
5  Facsimile:  (858) 551-1232
6
7  Attorneys for Plaintiff Michael Ignacio
8  (*Additional Counsel Listed on Following Page*)
9
                **UNITED STATES DISTRICT COURT**
10              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11 | MICHAEL IGNACIO, an individual, | Case No. 2:19-cv-06079-AB-RAO |
12 | on behalf of himself and on behalf of all persons similarly situated, | [Related Case Nos. 2:18-cv-09091-AB-RAO and 2:19-cv-07310-CAS (RAOx)] |
13 | |
14 |            Plaintiff, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
   | v. | |
15 | | Date:      July 17, 2020 |
16 | LABORATORY CORPORATION OF AMERICA, a Delaware Corporation; and DOES 1 through 500, inclusive, | Time:      10:00 a.m.
   Location:  United States District Court |
17 | | Central District
   350 W. 1st Street |
18 |            Defendants. | Courtroom 7B
   Los Angeles, CA 90012 |
19 | |
20 | MEER JAN, on her own behalf and on behalf of all others similarly situated, | |
21 | |
22 |            Plaintiffs, | |
   | v. | |
23 | |
24 | LABORATORY CORPORATION OF AMERICA, a Delaware Corporation; and DOES 1 through 100, inclusive, | |
25 | |
26 |            Defendants. | |
27
28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALMA HARO, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),

Plaintiff,

v.

LABORATORY CORPORATION OF AMERICA, a Delaware Corporation; and DOES 1 through 100, inclusive,

Defendants.

Matthew R. Bainer, Esq. (SBN 220972)
**THE BAINER LAW FIRM**
1901 Harrison St., Suite 1100
Oakland, California 94612
Telephone:   (510) 922-1802
Facsimile:    (510) 844-7701
mbainer@bainerlawfirm.com

Attorneys for Plaintiff Alma Haro


**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq. (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com

Attorneys for Plaintiff Meer Jan

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................. - 4 -

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................... - 5 -

    A.   *Haro* Action ...................................................... - 6 -

    B.   *Ignacio* Action .................................................. - 6 -

    C.   *Jan* Action ........................................................ - 6 -

    D.   Investigation ...................................................... - 6 -

    E.   Settlement Negotiations ..................................... - 7 -

III.    SUMMARY OF SETTLEMENT ........................................... - 7 -

    A.   The Proposed Class ............................................ - 7 -

    B.   Settlement Terms ............................................... - 8 -

        a.   Class Representatives' Enhancement Payments.......... - 8 -

        b.   Attorneys' Fees and Costs .............................. - 10 -

        c.   Payment to the LWDA ..................................... - 11 -

        d.   Settlement Administration Expenses .................. - 11 -

        e.   Settlement Payments to Class Members.............. - 12 -

        (1)  Individual Settlement Share Calculation............ - 12 -

        f.   Funding and Distribution of Settlement Funds .... - 13 -

        g.   Uncashed Checks and Cy Pres Beneficiary........... - 13 -

        h.   Released Claims............................................. - 13 -

III.    CONDITIONAL CERTIFICATION SHOULD BE GRANTED............ - 14 -

    A.   Rule 23(a) Class Requirements are Met............... - 14 -

        i.   Numerosity and Ascertainability....................... - 14 -

        ii.  Commonality ................................................ - 15 -

        iii. Typicality ................................................... - 16 -

        iv.  The Class Representatives and Their Counsel are Adequate- 16 -

        v.   Rule 23(b) Standards are Satisfied..................... - 17 -

vi.    **Plaintiffs' Counsel Should be Appointed as Class Counsel . - 18 -**

D.    **THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED - 19 -**

a.    **Court Approval Under Rule 23(e) Should be Granted ........ - 19 -**

b.    **The Settlement Resulted From Arm's-Length Negotiations - 20 -**

c.    **The Balancing of Factors ........................................................ - 21 -**

E.    **NATURE AND METHOD OF NOTICE ............................................ - 29 -**

a.    **Data to Administrator and Notice Mailing ............................ - 29 -**

b.    **The Notice Method Meets the Requirements of Rule 23 ..... - 29 -**

IV.    **CONCLUSION ....................................................................................... - 30 -**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advertising Specialty Nat'l Asso. v. Federal Trade Com.*,
    238 F.2d 108 (1st Cir. 1956) ..........................................................14

*Aguilar v. Cintas Corp. No. 2,*
    (2006) 144 Cal. App. 4th 121........................................................24

*Amaral v. Cintas Corp. No. 2,*
    163 Cal. App. 4th 1157 (2008)......................................................26

*Amchem Prods, Inc. v. Windsor,*
    521 U.S. 591 (1997) ......................................................................17

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) .........................................................15

*Avila v. Cold Spring Granite Co.,*
    2018 U.S. Dist. LEXIS 6142 (E.D. Cal. Jan 12, 2018) ......................27

*Baumann v. Chase Inv. Servs. Corp.,*
    (2014) 747 F.3d 1117, 1122 ..........................................................30

*Brinker Restaurant Corp. v. Superior Court,*
    53 Cal.4th 1004 (2012)....................................................... 17, 19

*Carrington v. Starbucks Corp.,*
    30 Cal. App. 5th 504 (2018)..........................................................27

*Ching v. Siemens Industry, Inc.,*
    2013 U.S. Dist. LEXIS 169279 (N.D. Cal. 2013)..........................15

Cook v. Niedert,
    142 F.3d 1004 (7th Cir. 1998).......................................................10

*Cortez v. Best Buy Stores,*
    (C.D. Cal. Jan. 25, 2012) 2012 WL 255345 ...................... 23

*Cotter v. Lyft, Inc.,*
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ........................................27

*Dilts v. Penske Logistics, LLC,*
    267 F.R.D. 625 (S.D. Cal. 2010)....................................................15

*Doninger v. Pac. Nw. Bell, Inc.,*
    564 F.2d 1304 (9th Cir. 1977).......................................................14

*Dunbar v. Albertson's Inc..*
    (2006) 141 Cal.App. 4th 1422.......................................................24

*Early v. Superior Court,*
  79 Cal.App.4th 1420 (2000)..................................................... 9

*Elder v. Schwan Food Co.,*
  No. B223911,  2011 WL 1797254 (Cal. Ct. App. May 12, 2011).....................28

*Fleming v. Covidien Inc.,*
  No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) ....27

*Frlekin v. Apple*, Inc.,
  8 Cal. 5th 1038 (2020).........................................................21

*Gatreaux v. Pierce,*
  690 F.2d 616 (7th Cir. 1982)..................................................19

*Gattuso v. Harte-Hanks Shoppers, Inc.,*
  (2007) 42 Cal.4th 554.........................................................23

*Grant v. Capital Mgmt. Servs., L.P.,*
  2013 WL 6499698 (S.D. Cal. 2013) .............................................18

*Guinn v. Sugar Transport of the Northwest, Inc.,*
  (E.D. Cal. 2017) 2017 WL 6513306 .............................................22

*Hanlon v. Chrysler Corp.,*
  150 F. 3d 1011 (9th Cir. 1998)........................................ 15, 18, 19, 20

*Harris v. Superior Court,*
  (2007) 154 Cal. App. 4th 164.................................................. 24

*Hernandez v. BCI Coca-Cola Bottling Company, Inc.,*
  554 Fed. Appx. 661 (9th Cir. 2014) ...........................................22

*Iskanian v. CLS Transp. Los Angeles, LLC,*
  59 Cal. 4th 348 (2014)........................................................25

*In re Surebeam Corp. Secs. Litig.,*
  2004 WL 5159061 (S.D. Cal. 2004) ............................................16

*In re Taco Bell Wage & Hour Actions,*
  (E.D. Cal. 2016) 2016 U.S. Dist. LEXIS 48577 ................................22

*Joel A. v. Giuliani,*
  218 F.3d 132 (2d Cir. 2000)...................................................19

*Koehl v. Verio, Inc.,*
  142 Cal.App.4th 1313 (2006)....................................................9

*Lanzarone v. Guardsmark Holdings, Inc.,*
  (C.D. Cal. 2006) 2006 WL 4393465 ............................................ 23

-ii-

Table of Authorities

*Lazarin v. Pro Unlimited, Inc.*,
  2013 WL 3541217 (N.D. Cal. 2013) ...........................................................8

*Leyva v. Medline Indus.*,
  716 F.3d 510 (9th Cir. 2013) ....................................................................17

*Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................20,28

*New Cingular Wireless PCS, LLC v. Pub. Utilities Comm'n*,
  246 Cal.App. 4th 784 (2016) ....................................................................26

*O'Connor v. Uber Techs., Inc.*,
  No. 13-03826-EMC, 201 F. Supp. 3d 1110 (N.D. Cal. Aug. 18, 2016) ............26

*Roberts v. Texaco*,
  979 F.Supp. 185 (S.D.N.Y. 1997) .............................................................10

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ..................................................................16

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ....................................................................20

*Sakkab v. Luxottica Retail N. Am., Inc.*,
  803 F.3d 425 (9th Cir. 2015) ....................................................................25

*Salazar v. Sysco Central Cal.*,
  No. 15-01758-DAD, 2017 WL 1135801 (E.D. Cal. Feb. 2, 2017) ...................26

*Staton v. Boeing*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................10

*Stiller v. Costco Wholesale Corp.*,
  (S.D. Cal. 2014) 298 F.R.D. 611 ..............................................................23

*Telecomm. Corp. v. DirectTV*,
  221 F.R.D. 523 (C.D. Cal. 2004) .............................................................28

Thornton v. East Texas Motor Freight,
  497 F.2d 416 (6th Cir. 1974) ....................................................................10

*Thurman v. Bayshore Transit Mgmt.*,
  203 Cal.App. 4th 1112 (2012) ..................................................................28

*Ugas v. H&R Block Enters., LLC*
  (C.D. Cal. July 9, 2012) 2012 WL 5230297 ..............................................23

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*,
   593 F.3d 802 (9th Cir. 2010)....................................................................... 14

*Vanwagoner v. Siemens Industry, Inc.*,
   2014 U.S. Dist. LEXIS 67141 (N.D. Cal. 2014).....................................15

*Walsh v. IKON Solutions, Inc.*,
   (2007) 148 Cal. App. 4th 1440 ................................................................. 24

*White v. Starbucks Corp.*,
   (N.D. Cal. 2007) 497 F.Supp.2d 1080 ...................................................... 23

*Whiteway v. Fedex Kinkos Office & Print Services, Inc.*,
   2007 U.S. Dist. LEXIS 95398 (N.D. Cal. 2007)........................................ 9

**Statutes**

Fed. R. Civ. P. 23(a)(4) ...........................................................................16
Fed. R. Civ. P. 23(b)(3) ......................................................................17, 18

**Rules**

*Civil Code* section 1542 ........................................................................... 13
Fed. R. Civ. P. 23(a) .................................................................................2
Fed. R. Civ. P. 23(b)(3) ............................................................................. 2
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................ 2
Fed. R. Civ. P. 23(e) .................................................................................2
Fed. R. Civ. P. 23(g) ................................................................................. 2
Northern District Local Rule 7-4(b) ............................................................ 3

**California Labor Codes**

§ 2699(e)(2) ...........................................................................................26
§ 2699(h)................................................................................................ 27
§ 2699(i).................................................................................................25
§203 .......................................................................................................27
§ 226 ..................................................................................................22,27
§226.7 .................................................................................................... 25
§2699(f)(2)............................................................................................. 26
§558(a) ...................................................................................................27
§1194.2 ..................................................................................................27

**Other Authorities**

*Manual for Complex Litigation*, Fourth, § 22.661 (2004) .............................19, 20

## NOTICE OF MOTION AND MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

**PLEASE TAKE NOTICE THAT** on July 17, 2020, at 10:00 a.m. at the United States District Court for the Central District of California located at 350 W. 1st Street, Courtroom 7B, Los Angeles, California, Plaintiffs Alma Haro, Michael  Ignacio and Meer Jan, individually and on behalf of those similarly situated will, and hereby do, move this Court to:

1. Grant preliminary approval of the class action settlement reached between the Plaintiffs, Alma Haro, Michael Ignacio and Meer Jan ("Plaintiffs") and Defendant, Laboratory Corporation of America ("Defendant" or "Laboratory Corporation") (Plaintiffs and Defendant collectively referred to as the "Parties") as set forth in the Parties' Class Action Settlement Agreement (the "Settlement Agreement"), which is attached as Exhibit 1 to the Declaration of Marcus J. Bradley, filed concurrently herewith in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Bradley Decl.");

2. Conditionally certify the Settlement Class defined as: all persons employed by Defendant in the State of California in the following positions: Patient Service Technicians ("PST"), PST Specialists, Patient Intake Representatives, PST Team Leaders, PSC Site Coordinators, PSC Administrators, PSC Administrators/PST, and Phlebotomist/Couriers during the period starting on September 20, 2014 through July 1, 2020 during the period September 20, 2014 to July 1, 2020 (the "Class Period");

3. Approve the Class Notice of Settlement (in the form set forth as Exhibit A to the Settlement Agreement);

4. Approve the filing of the Consolidated Complaint (in the form set forth as Exhibit B to the Settlement Agreement) for settlement purposes;

5. Approve, Alma Haro, Michael Ignacio and Meer Jan as the Class Representatives;

- 1 -

6. Approve the Bainer Law Firm, Blumenthal Nordrehaug Bhowmik De Blouw LLP, and Bradley/Grombacher LLP, as Class Counsel;

7. Approve ILYM Group, Inc., as the Settlement Administrator;

8. Schedule the date for the final approval hearing; and

9. Enter the [Proposed] Order Preliminarily Approving Class Action Settlement Agreement filed herewith.

This motion is unopposed as based on the Settlement Agreement.  This Motion is made on the grounds that:

a. The Settlement Class meets all of the requirements for class certification for purposes of settlement pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

b. The Settlement is fair, adequate and reasonable as required under Rule 23(e) of the Federal Rules of Civil Procedure;

c. Plaintiffs and their counsel are adequate to represent the Settlement Class as required by Rule 23(a)(4) and (g) of the Federal Rules of Civil Procedure;

d. The notice procedures and related forms comport with all relevant due process requirements and the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure; and

e. Based on the foregoing, notice should be directed to Settlement Class Members and a final fairness hearing should be scheduled.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declarations of Marcus J. Bradley, Mathew Bainer and Kyle Nordrehaug; (4) the Declaration of Sean Hartranft of the ILYM Group, Inc.; (5) the Parties' Class Action Settlement Agreement ("Settlement Agreement" or "Agreement"); (6) the Notice of Class Action

Settlement; (7) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Further, pursuant to Central District Local Rule 7-4(b), Plaintiffs respectfully requests that this Court grant Plaintiffs' relief from the twenty-five-page (25) limit and permit the filing of the attached Memorandum of Points and Authorities not to exceed XXX pages.   Such additional page length is needed to fully address the issues raised in this motion.

Dated: June 12, 2020            **BAINER LAW FIRM**


By: */s/ Matthew R. Bainer*
_____            Mathew R. Bainer, Esq.
                 Attorneys for Plaintiff Alma Haro



**BRADLEY/GROMBACHER, LLP**


By:  */s/ Marcus J. Bradley*
                 Marcus J. Bradley, Esq.
                 Kiley L. Grombacher, Esq.
                 Lirit A. King, Esq.
                 Attorneys for Plaintiff Meer Jan


**BLUMENTHAL NORDREHAUG
BHOWMIK DEBLOUW LLP**


By: */s/ Kyle Nordrehaug*
                 Norman B. Blumenthal, Esq
                 Kyle Nordrehaug, Esq.
                 Attorneys for Plaintiff Michael Ignacio

- 3 -

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Alma Haro ("Haro"), Michael Ignacio ("Ignacio") and Meer Jan ("Jan") (collectively "Plaintiffs") respectfully submit this memorandum of points and authorities in support of the Motion for Preliminary Approval of Settlement of the class action. This motion is unopposed by Defendant Laboratory Corporation of America ("Defendant") (collectively with Plaintiffs, the "Parties").

## I. INTRODUCTION

Plaintiffs are former non-exempt employees of Defendant, Laboratory Corporation of America. Plaintiffs alleged that Defendant failed to provide wages for all hours worked, meal and rest breaks, failed to provide accurate itemized wage statements, failed to provide final wages when due, and reimbursement for business expenses, and violated the Unfair Competition Law ("UCL") and the Private Attorneys General Act of 2004 ("PAGA").

Plaintiffs now seek preliminary approval of the Parties' Class Action Settlement Agreement ("Settlement" or "Agreement"). The proposed settlement is a non-reversionary $1,225,000.00 Gross Settlement Fund ("GSF") on behalf of approximately 2,270 class members.[1] The proposed Class is defined as "all persons employed by Defendant in the State of California in the following positions: Patient Service Technicians ("PST"), PST Specialists, Patient Intake Representatives, PST Team Leaders, PSC Site Coordinators, PSC Administrators, PSC Administrators/PST, and Phlebotomist/Couriers during the period starting on September 20, 2014 through July 1, 2020.

Settlement Class Members[2] will automatically receive a pro rata share of the settlement funds without submitting a claim. Assuming each Putative Class

---

[1] As of the time of the mediation, Defendant estimated that there were 2,270 Putative Class Members who worked 289,192 Workweeks.

[2] Settlement Class Members are all Putative Class Members who do not submit a valid and timely request to exclude themselves from the Settlement. *See* Agreement at Paragraph 11.

-4-

1    Member participates in the Settlement, the Settlement is projected to pay each an

2    estimated average gross payment of $304.70[3]. The proposed Settlement was

3    reached after considerable investigation – including the depositions of Haro,

4    Ignacio, and Jan, as well as the analysis of Defendant's employment policies, time

5    keeping policies, and payroll records – and a private mediation that occurred on

6    two different days with an experienced third-party mediator. The Settlement is

7    reflective of the strengths and vulnerabilities of Plaintiffs' case, the risks of class

8    certification, as well as the risks of proceeding on the merits of the claims. When

9    taking these risks into account, the proposed Settlement is in the best interests of

10   the Class. Therefore, Plaintiffs respectfully request that the Court grant

11   preliminary approval of the Settlement, approve the Class Notice, appoint ILYM

12   Group, Inc. as the Settlement Administrator, appoint Plaintiffs as the Class

13   Representatives, appoint Plaintiffs' counsel as Class Counsel, and schedule a Final

14   Approval Hearing.

15   **II.   FACTUAL AND PROCEDURAL BACKGROUND**

16   Defendant Laboratory Corporation of America Holdings (LabCorp) is one

17   of the top providers of clinical laboratory services in the world, performing tests

18   on more than 440,000 patient specimens each day on behalf of managed care

19   organizations, hospitals, doctors, government agencies, drug companies, and

20   employers. Its services range from routine urinalyses, HIV tests, and Pap smears

21   to specialty testing for diagnostic genetics, oncology diagnosis and monitoring,

22   infectious diseases, clinical drug trials, and allergies. LabCorp operates about

23   1,700 service sites across the US that collect patient specimens and ship them to

24   one of its primary laboratories where tests are performed. Defendant employs non-

25   exempt hourly employees at each of these service sites and laboratories. All four

26   Plaintiffs worked for Defendant at locations throughout the State of California.

27

28   [3] $691,666.67 NSF / 2,270 Class Members as of the date of mediation.  This number may decrease slightly with the possible addition of some class member from mediation through July 1, 2020.

### A.     *Haro* **Action**

Plaintiff Haro, represented by The Bainer Law Firm, filed a class action complaint, including a claim on behalf of the State of California for penalties pursuant to the California Private Attorney General Act of 20004 (the "PAGA") on September 20, 2018 in the Los Angeles County Superior Court. Defendant removed the lawsuit to the United States District Court Central District of California on October 22, 2018.

### B.     *Ignacio* **Action**

Plaintiff Ignacio, represented by Blumenthal Nordrehaug Bhowmik De Blouw LLP, filed a class action complaint on June 24, 2019 in the Los Angeles Superior Court.  Defendant removed the lawsuit to the United States District Court Central District of California on July 15, 2019. Ignacio worked as a "float" phlebotomist who would travel to various site locations to report for work.

### C.     *Jan* **Action**

Plaintiff Jan, represented by Bradley/Grombacher, LLP, filed a class action complaint on June 26, 2019 in the Sacramento County Superior Court. Defendant removed the lawsuit to the United States District Court Eastern on July 30, 2019. On August 23, 2019, the *Jan* action was transferred to the Central District.

Ultimately, these cases were consolidated for purposes of discovery. Additionally, a Consolidated Complaint in the form set forth as Exhibit B to the Settlement Agreement, encompassing the *Haro*, *Ignacio* and *Jan* actions, will be filed concurrently with the herein motion.

### D.     **Investigation**

Plaintiffs propounded special interrogatories and demands for production of documents to which Defendant responded. Defendant produced documents related to its wage and hour policies, including meal and rest breaks, time keeping policies, time and wage records, and its business organization charts. Additionally, depositions of Plaintiffs, Haro, Ignacio and Jan were conducted by

- 6 -

Defendant. Defendant has also produced a comprehensive batch of Defendant's policies and procedures. At the time of the mediation, Class Counsel had prepared for and were proceeding with arrangements to conduct the deposition of the Defendant's 30(b)(6) deponent.

### E. Settlement Negotiations

On February 25, 2020, the Parties participated in a global private mediation of the *Haro*, *Ignacio*, and *Jan* Actions. The Parties engaged in extensive, arm's-length negotiations mediated by experienced and respected class action wage and hour mediator, Gig Kyriacou. After considerable negotiation, the Parties reached an agreement in principle to settle the case, the terms of which were negotiated over the following weeks and finalized in Agreement the Parties now ask the Court to preliminarily approve. *See* Declaration of Marcus Bradley, **Exhibit 1** (Agreement).[4]

### III.  SUMMARY OF SETTLEMENT

The principle terms of the Agreement are as follows:

### A. The Proposed Class

The Agreement proposes a Settlement Class comprised of:

> All persons employed by Laboratory Corporation of America in the State of California in the following positions: Patient Service Technicians ("PST"), PST Specialists, Patient Intake Representatives, PST Team Leaders, PSC Site Coordinators, PSC Administrators, PSC Administrators/PST, and Phlebotomist/Couriers during the period starting on September 20, 2014 through July 1, 2020 during the period September 20, 2014 to July 1, 2020 (the "Class Period"). *See* Agreement at Paragraph 9.

There are approximately 2,270 individuals who fall within this class

---

[4] All citations to the Agreement in **Exhibit 1** will be "Agreement, Paragraph [insert]."

definition.

### B. Settlement Terms

Under the Agreement, Defendant will pay $1,225,000.00 ("Gross Settlement Fund" or "GSF") to fully and finally settle this matter. This is the total amount Defendant can be required to pay under this agreement, with the exception of Employer payroll taxes, which will remain Defendant's exclusive responsibility and will be paid by Defendant separate and apart from the GSF. No portion of the GSF will revert to Defendant for any reason. The following deductions from the GSF will be made, subject to the Court's approval:

### a. Class Representatives' Enhancement Payments

Subject to Court approval, Plaintiffs shall receive a payment not to exceed $10,000.00 each in consideration for a general release of all claims against Defendant. The payment shall be made from the GSF. If the amount awarded is less than the amount requested, the difference shall become part of the Net Settlement Fund ("NSF"). The payment is in consideration for a general release of Plaintiffs' claims against Laboratory Corporation. The Agreement includes the following Plaintiffs' release:

> Upon the date the Court grants Final Approval of the Settlement, and in consideration for the Class Representative Enhancement Payments, Plaintiffs, for themselves, their successors, assigns, agents, executors, heirs and personal representatives, spouse and attorneys, and any and all of them (collectively, the "Plaintiff Releasers"), voluntarily and with the advice of counsel, waive and release to the fullest extent permitted by law, any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against any of the Released Parties of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute,

ordinance, regulation, constitution, common law, or other source of law or contract, whether known or unknown, and whether anticipated or unanticipated, including all claims arising from or relating to any and all acts, events and omissions occurring prior to the date Plaintiffs sign this Agreement including, but not limited to, all claims which relate in any way to Plaintiffs' employment with or termination of employment from Defendant or any of the other Released Parties ("Named Plaintiff Individual Released Claims"). Plaintiffs further release all unknown claims, covered by California Civil Code Section 1542, against Defendant and any of the Released Parties.  Section 1542 states:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

*See* Agreement, Paragraph 53.

Moreover, as representative for the absent Class Members, Plaintiffs risked a potential judgment taken against them for attorneys' fees and costs if this matter had not been successfully concluded. Case law holds that a losing party is liable for the prevailing party's costs. *See Early v. Superior Court*, 79 Cal.App.4th 1420, 1433 (2000). And in some wage and hour actions, such as this case, pursuant to *California Labor Code* § 218.5, the prevailing party can be liable for attorneys' fees as well. Though the fee agreement provides that Class Counsel would pay such costs, Plaintiffs would nevertheless have had a cost bill entered against them leaving them ultimately liable for potentially hundreds of thousands of dollars in the unexpected possibility that Class Counsel did not meet their obligation to cover those costs. There have been judgments like this entered against class

representatives.[5] The risk of payment of Defendant's costs, alone, is a sufficient basis for an award of the requested service award. Few individuals are willing to take this risk, and Plaintiffs championed a cause on behalf of others with potentially huge monetary risks.

Courts have regularly and routinely granted approval of settlements containing such enhancements. *See*, e.g., *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003). The typical enhancement award in wage and hour cases ranges from $5,000 to $75,000, although some awards may be higher. Very commonly there is more than one class representative who receive awards in the above range.[6] Additionally, the modern-day work force is mobile, with employees holding several jobs over the span of their career. It is also true that prospective employers in this computer, high-tech age "Google" and/or do extensive background checks and have access to court databases to see if applicants have ever filed a lawsuit or have ever been sued. Here, Plaintiffs' conduct will not be lost on a prospective employer who has to choose between an applicant who has never sued an employer and one who has done so. The requested award far from compensates Plaintiffs for opportunities they may lose in the future because of the exercise of a Constitutional right to Petition the Courts for redress of a grievance.

**b.  Attorneys' Fees and Costs**

Subject to Court approval, Plaintiffs' Counsel shall request an award of attorneys' fees in an amount of $408,333.33 (1/3 of the GSF). *See* Agreement,

---

[5] *See*, e.g. *Koehl v. Verio, Inc*., 142 Cal.App.4th 1313, 1328 (2006) (a wage and hour class action where Defendant prevailed at trial, the named Plaintiffs were held liable, jointly and severally for the Defendant's attorneys' fees); *Whiteway v. Fedex Kinkos Office & Print Services, Inc.,* No. 05-2320, 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. Dec. 17, 2007) (a wage and hour misclassification case lost on summary judgment, after the case was certified, the named Plaintiff was assessed costs in the sum of $56,788.).

[6] *See*, e.g., *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997) ("present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril, a substantial enhancement award is justified"); *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those drivers who protect and help to bring rights to a group of employees who have been the victims of discrimination.").

Paragraph 21. This includes work remaining in documenting the settlement, securing Court approval, ensuring the settlement is fairly administered, and obtaining dismissal of the action. Also, subject to Court approval, Plaintiffs' Counsel shall request a reimbursement from the GSF for actual litigation costs in an amount not to exceed $40,000.00. *See* Agreement, Paragraph 51.

Class Counsel will submit their fee motion, supporting their request for one-third (1/3) of the GSF including a lodestar crosscheck, hours worked, and hourly rates. Class Counsel will file the moving papers in support of their attorney fee request 7 days before the expiration of the Notice Period.

### c.  Payment to the LWDA

Subject to Court approval, the Agreement allots $20,000.00 to PAGA penalties. Seventy-five percent (75% or $15,000.00) of the PAGA Payment shall be paid to the Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25% or $5,000.00) of the PAGA Payment will be distributed to the Class.

### d.  Settlement Administration Expenses

After obtaining competing bids from multiple administrators, the Parties have agreed to the appointment of ILYM Group, Inc. ("ILYM") as the settlement administrator. ILYM is an experienced class administration company that has acted as claims administrator in numerous wage and hour cases. The Agreement allots an amount not to exceed $30,000.00 to administer the Settlement. ILYM's bid was less expensive than CPT's and is currently quoted at $23,341.50, but not to exceed $30,000. *See* Declaration of Sean Hartranft re: Qualifications of ILYM Group, Inc as Settlement Administrator, ¶ 9, **Exh. 2**.

The Administration Costs will be paid from the GSF. If ILYM's actual costs or the amount awarded is less than the amount allotted in the Agreement, the difference shall become part of the NSF and distributable to Participating Class Members. These costs are reasonable, as ILYM will mail notice packets to the

- 11 -

1    class, and keep track of objections and requests for exclusion from the Settlement.

2    Should preliminary and final approval be granted by the Court, ILYM will work

3    with the Parties to facilitate the funding of the GSF, disbursement of all Court-

4    approved payments, and disbursement of the NSF to Participating Class Members.

5    Bradley Decl. ¶ 35.

6    ### e. Settlement Payments to Class Members

7    After all deductions have been made, it is estimated that $691,666.67 Net

8    Settlement Fund will be available for disbursement to Participating Class

9    Members (all Class Members who do not submit a valid and timely request to

10   exclude themselves from this Settlement). The money available for payout to

11   these individuals comes out of the NSF, which is what remains of the GSF after

12   subtracting all Court approved attorneys' fees and costs, the Class Representative

13   Enhancement Payments, Administration Costs, and the PAGA Payment. Each

14   individual Settlement Share will be calculated as follows:

15   ### (1)    Individual Settlement Share Calculation.

16   Upon Final Approval, a Final Workweek Value will be calculated by

17   dividing the final Net Settlement Fund by the total number of Workweeks worked

18   by all Settlement Class Members in Qualifying Positions during the Class Period.

19   The Final Workweek Value will be multiplied by the total number of Workweeks

20   each individual Settlement Class Member worked in a Qualifying Position during

21   the Class Period to arrive at a final calculation of the Individual Settlement

22   Payment. If a Settlement Class Member worked any day during a Workweek, it

23   will be counted as a Workweek for purposes of calculating the final Individual

24   Settlement Payment.  *See* Agreement, Paragraph 22. Thus, Class Members'

25   settlement payments are directly tied to the number of weeks worked for

26   defendant in a non-exempt hourly position.

27   (2)    Each Individual Settlement Payment will represent

28   wages, interest, and penalties allocated using the following formula: 50% as

- 12 -

1    wages (reported via Form W-2), and 50% for interest and non-wage penalties
2    (reported via Form 1099).  *See* Agreement, Paragraph 36(b).

3    **f.  Funding and Distribution of Settlement Funds**

4         Subject to the Court's final approval and provided that there are no
5    objections or appeals to the Court's Final Approval Order and Judgment, the GSF
6    shall be funded by Defendant within 21 calendar days after the Effective Final
7    Settlement Date[7]. *See* Agreement, Paragraph 36(c). Within 10 to 15 calendar days
8    after the Effective Final Settlement Date, the Settlement Administrator will
9    disburse all payments required under the Settlement Agreement. *See* Agreement,
10   Paragraphs 48-51.

11   **g.  Uncashed Checks and Cy Pres Beneficiary**

12        Pursuant to the Agreement, any checks issued to Participating Class
13   Members shall remain valid and negotiable for 180 days from the date of issuance.
14   *See* Agreement, Paragraph 47(b). Any checks that are not cashed upon the
15   expiration of that 180-day time period shall be distributed to the State of
16   California Controller's Unclaimed Property Fund in the name and for the benefit
17   of the individual Settlement Class Member by the Parties. *Id.*

18   **h.  Released Claims**

19        In exchange for Defendant's promise to make the payments provided for in
20   the Agreement, as of the Effective Final Settlement Date, Settlement Class
21   Members will release all known and unknown claims that were alleged or that
22   could have been alleged based on the facts of the complaints filed in the matter.
23   The release will be as to the Released Parties, which shall include Defendant and
24   all parents, subsidiaries or affiliated corporations. *See* Agreement, Paragraph 53.
25   Thus, the release is limited to claims that were alleged or could have been alleged

26
27
28

---

[7] "Effective Date" means the effective date of this Settlement will be when the final approval of the settlement can no longer be appealed, or, if there are no objectors and no plaintiffs in intervention at the time the Court grants final approval of the settlement, the date the Court enters judgment granting final approval of the settlement. *See* Agreement, Paragraph 19.

- 13 -

in Plaintiffs' consolidated complaint and is tied to the facts and allegations contained therein. Only Named Plaintiffs have agreed to a general release of all claims, including a waiver under California *Civil Code* section 1542. *Id.*

### C.  CONDITIONAL CERTIFICATION SHOULD BE GRANTED

A class action may be certified if all four prerequisites under Rule 23(a) are satisfied and at least one subsection under Rule 23(b) is met. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977). The requirements of Rule 23(a) are referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). As will be discussed below, these requirements are met here. In addition, the Parties agreed to certification of the Class under Rule 23(b)(3) for settlement purposes which has the added requirement of "predominance." *Id.* Laboratory Corporation does not oppose certification for the purpose of settlement only. As such, the Parties seek provisional certification of the Class. Should the Settlement not be approved or not become final for any reason, the Parties agree no class will be certified, and Laboratory Corporation's agreement to certify a class conditionally for settlement purposes only will not be used in connection with any subsequent motion for class certification.

### a.  Rule 23(a) Class Requirements are Met

### i.  Numerosity and Ascertainability

Rule 23(a)(1) is typically referred to as "numerosity" in that it requires a class that is "so numerous that joinder of all members is impracticable." The term "impracticable" does not mean "impossible," and only refers to "the difficulty or inconvenience of joining all members of the class." *Advertising Specialty Nat'l Asso. v. Federal Trade Com.*, 238 F.2d 108, 119 (1st Cir. 1956). Here, there are approximately 2,270 class members, all of whom were subject to Defendant's allegedly common policy of unpaid compensable time and non-compliant meal and rest period, among other derivative wage and hour claims.  As such, it would

- 14 -

not be practical to join so many parties to the lawsuit. Therefore, the numerosity requirement is satisfied.

### ii.  Commonality

Rule 23(a) requires that "there are questions of law or fact common to the class." However, "all questions of fact and law need not be common to satisfy the rule…[and] [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998). The Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

The commonality requirement is satisfied in this action.  Here, the class claims of Defendant's employees turn upon answers to overarching common questions regarding Defendant's policies and procedures that are capable of class-wide resolution for settlement purposes.  For settlement purposes, the common questions raised by employees, include: (1) whether Defendant's policy for employees resulted in compensable off-the-clock work and subsequent failure to pay all regular and overtime hours worked; (2) whether Defendant's uniform staffing policy resulted in employees to have missed, late, or interrupted meal and rest periods; (3) whether Defendant's willfully failed to pay each all wages owed upon termination; and (4) whether Defendant's failed to provide employees with wage statements compliant with California law.  Here, because Defendant's policies and practices, and the common questions of law and fact that they raise, apply uniformly to each member of the Class, certification is appropriate of the entire Class.[8]

---

[8] *See Dilts v. Penske Logistics, LLC,* 267 F.R.D. 625, 633 (S.D. Cal. 2010); *Ching v. Siemens Industry, Inc.*, 2013 U.S. Dist. LEXIS 169279, *4 (N.D. Cal. 2013); *Vanwagoner v. Siemens Industry, Inc.*, 2014 U.S. Dist. LEXIS 67141, *11 (N.D. Cal. 2014).

- 15 -

### iii. Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Here, Plaintiffs and the Class Members all worked for Defendant as non-exempt employees in phlebotomy-related positions. Plaintiffs contend that they were all subject to the same allegedly non-compliant policies and practices—namely,  Defendant's allegedly common policy of unpaid compensable time and non-compliant meal and rest period, among other derivative wage and hour claims from which Plaintiff and the Class are also alleged to have suffered similar injury.

### iv. The Class Representatives and Their Counsel are Adequate

The proposed Class Representatives and their counsel have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two prongs, the first being "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *5 (S.D. Cal. 2004). In this case, Plaintiffs' Counsel, the Bainer Law Firm, Blumenthal Nordrehaug Bhowmik De Blouw LLP, and Bradley/Grombacher LLP, meet this standard and have been appointed class counsel in numerous class actions. *See* Bradley Decl. ¶ 21-32; Nordrehaug Decl.  ¶ 3; Bainer Decl. ¶ 6.

The second prong of the adequacy test is "that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *1-2 (S.D. Cal. 2004). Here, there is no evidence of antagonism between the Class Representatives' interests and those of the Class. The Class Representatives have litigated this case in good

- 16 -

faith and the interests of the Class Representatives are aligned with those of the Class as they all share a common interest in challenging the legality of the alleged policies and procedures on which the claims are based. There is also no evidence of any collusion between the Parties. Plaintiffs' counsel negotiated with Laboratory Corporation to pay $1,225,000 to settle and counsel was only able to negotiate this sum after extensive exchange and analysis of information and data, depositions, as well as a full day of mediation and a second half-day of mediation with a professional neutral. These reasons compel that Plaintiffs should be appointed as Class Representatives. Laboratory Corporation does not oppose the appointment of Plaintiffs as Class Representatives for settlement purposes only. At Final Approval, Class Counsel will request final approval of a Class Representative Enhancement Payments to compensate each Plaintiff for agreeing to a general release of their claims, for their efforts in prosecuting this matter, and for the risks and stigma they now face for doing so.

### v. Rule 23(b) Standards are Satisfied

#### 1. Common Issues Predominate

In addition to the Rule 23(a) requirements, a court must find that common issues of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). With regard to the requirements of subsection (b), Rule 23(b)(3) allows class certification where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). To determine whether common questions predominate, a court is to consider "the relationship between the common and individual issues." The proposed Class in this case is sufficiently cohesive to warrant adjudication by representation. Furthermore, because the "predominance" factor concerns liability, any variation in damages is insufficient

- 17 -

to defeat class certification. *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013). Plaintiffs contends all claims in this litigation are based on allegedly common, class-wide policies and procedures, and that liability could be determined on a class-wide basis. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033 (2012). As noted above, the major issue of whether Defendant's allegedly common policy resulting in unpaid compensable time and non-compliant meal and rest period, among other derivative wage and hour claims legally compliant wage statements to Plaintiffs and the Class stem from what Plaintiffs claim are uniform policies and practices.

### 2. The Class Action Device is Superior

The class action device is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Certification of the Class will allow class members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism would provide. Alternative methods of resolution would be individual claims for relatively small amount of damages. *Hanlon*, 150 F. 3d at 1019-20. These claims "would prove uneconomic for potential plaintiffs' because 'litigation costs would dwarf potential recovery.'" *Id.* at 1023.

### 3. No Manageability Issues Preclude Certification

Finally, no issues of manageability preclude certification. A court faced with a request for a settlement-only class need not inquire whether the case would present intractable problems of trial management, even though other requirements under Rule 23 must still be satisfied. *See, e.g., Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *5 (N.D. Cal. 2013). Nevertheless, as discussed herein, the proposed plan of distribution and settlement process are efficient and manageable.

### vi.  Plaintiffs' Counsel Should be Appointed as Class Counsel

1    Rule 23(g) requires that courts consider the following four factors when

2  appointing settlement class counsel: (1) whether counsel has investigated the class

3  claims; (2) whether counsel is experienced in handling class actions and complex

4  litigation; (3) whether counsel is knowledgeable regarding the applicable law; and

5  (4) whether counsel will commit adequate resources to representing the class. *See*

6  *Grant v. Capital Mgmt. Servs., L.P.*, 2013 WL 6499698, *2-3 (S.D. Cal. 2013). It

7  is clear from the record presented herein that Plaintiffs' Counsel should be

8  appointed Class Counsel. Plaintiffs' Counsel is highly experienced and

9  knowledgeable regarding complex wage and hour class actions like this one.

10  Bradley Decl. ¶ 21-32; Nordrehaug Decl.  ¶ 3; Bainer Decl. ¶ 6.  Plaintiffs'

11  counsel have prosecuted numerous cases on behalf of employees for California

12  Labor Code violations and thus are experienced and qualified to evaluate the class

13  claims and to evaluate settlement versus trial on a fully informed basis, and to

14  evaluate the viability of the defenses. Bradley Decl. ¶ 21-32; Nordrehaug Decl.  ¶

15  3; Bainer Decl. ¶ 6. In sum, Plaintiffs' counsel are fully committed to representing

16  the class in this case, have the skill and expertise to do it properly, and will

17  continue to do so whether or not the settlement is approved. Accordingly, the

18  appointment of the Bainer Law Firm, Blumenthal Nordrehaug Bhowmik De

19  Blouw LLP, and Bradley/Grombacher LLP, as Class Counsel is appropriate.

20    **D.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

21    **a.  Court Approval Under Rule 23(e) Should be Granted**

22    Rule 23(e) provides that any compromise of a class action must receive

23  court approval. The court has broad discretion to grant approval and should do so

24  where the proposed settlement is "fair, adequate, reasonable, and not a product of

25  collusion." *Hanlon*, 150 F.3d at 1026. In deciding whether a settlement should be

26  approved, the Ninth Circuit has a "strong judicial policy that favors settlement,

27  particularly where complex class action litigation is concerned." *In re Heritage*

28  *Bond Litigation*, 2005 WL 1594403 (C.D. Cal. 2005). Court approval involves a

two-step process in which a court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *Manual of Complex Litigation*, Fourth Ed., § 21,632 (2004). At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). A class action settlement should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Although at preliminary approval, the Court need not engage in the rigorous analysis required for final approval (*see Manual for Complex Litigation*, Fourth, § 22.661 at 438 (2004)), the ultimate fairness determination will include balancing several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement. *Officers for Justice*, *supra*, 688 F.2d 615, 625.

Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunication cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). District courts have wide discretion in assessing the weight and applicability of each factor. *Id.*

### b.  The Settlement Resulted From Arm's-Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. In *Rodriguez v. West*

1   *Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined

2   that courts should defer to the "private consensual decision of the [settling]

3   Parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. The proposed Settlement is

4   the product of arm's-length negotiations that spanned a full day of mediation and

5   a second half-day of mediation facilitated by Gig Kyriacou, a respected mediator

6   in wage and hour class actions.

7   ### c.  The Balancing of Factors

8       The factors noted above are commonly considered at preliminary approval.

9   The factors here, in their respective levels of applicability, favor approval of the

10  Settlement. Plaintiffs submit and Defendant disputes that this case was factually

11  and legally strong. This matter was settled after substantial discovery, which

12  included written discovery and depositions. Thus, at the point the Settlement was

13  initially agreed to, no one was in a better position than Class Counsel to

14  understand the strengths and potential limitations of Plaintiffs' case and thus

15  evaluate the reasonableness of the amount offered in settlement. Bradley Decl. ¶

16  7-9.

17      Plaintiffs such as "float" phlebotomists like Ignacio based their unpaid

18  wages claim off of the time it took employees to enter the facility, to "come to the

19  site early to start computers and get ready for patients, but not to clock in until

20  later" as these employees were under Defendant's control.  Much of the Parties'

21  investigation and analysis has focused on this claim as Plaintiffs view as one of

22  their strongest theories of liability, particularly in light of the California Supreme

23  Court's recent ruling in *Frlekin v. Apple*, Inc., 8 Cal. 5th 1038 (2020).  However,

24  Defendant produced its timekeeping policies, which are facially complaint.  Thus,

25  Defendant argued it owed no wages to its employees.

26      Aside from the merits of Plaintiff's claims, Defendant argued Plaintiffs'

27  off-the-clock theory could not proceed on a class wide or representative basis

28

- 21 -

1   given that Defendant does not have a common policy of requiring employees to

2   work off-the-clock.

3        Plaintiffs argue that Defendant's wage statements fail to comply with the

4   requirements of Labor Code §226(a), as they fail to itemize the total hours worked

5   each pay period and the applicable hourly rate for all hours worked Plaintiffs

6   contend that employees cannot determine whether they were paid for all time

7   worked and exactly what hours should be included in each check. Specifically,

8   Defendant's payment of the additional overtime wage used to increase the rate for

9   certain bonuses leaves the employee with no idea how many hours or what hourly

10  rate was being paid. On call employees also cannot tell how many hourly wages

11  they are being paid for the wage that is calculated by the number of hours worked

12  Defendant contends that its paystubs comply with the standard set forth in

13  *Hernandez v. BCI Coca-Cola Bottling Company, Inc.*, 554 Fed. Appx. 661 (9th

14  Cir. 2014), Labor Code § 226, and thus are fully compliant.

15       Plaintiffs also contend Laboratory Corporation failed to provide duty-free

16  30-minute meal periods to employees, as employees were constantly interrupted

17  during meal breaks. However, Laboratory Corporation contends its policies

18  provide legally compliant duty-free meal periods, that made meal periods

19  available to all non-exempt employees.

20       Similarly, Plaintiffs based their unpaid wages claim off of the time it took

21  employees to "come to the site early to start computers and get ready for patients,

22  but not to clock in until later." Plaintiffs contend that this requirement caused

23  employees to work 15 minutes off the clock at the start of a shift.  Defendant

24  obtained numerous declarations from putative class members attesting to the fact

25  that they experienced no such issues.

26       Plaintiffs also contend Defendant failed to authorize full net 10-minute rest

27  breaks in a suitable resting facility, in violation of the IWC Wage Orders.

28

1    Defendant obtained numerous declarations from putative class members attesting
2    to the fact that they experienced no such issues.

3        In some cases, these theories of recovery have been found to insinuate
4    individual questions as to the circumstances surrounding why each individual
5    believed the company prevented them from taking meal and rest breaks the
6    policies purport to make available. *See In re Taco Bell Wage & Hour Actions*
7    (E.D. Cal. 2016) 2016 U.S. Dist. LEXIS 48577 * 20; *Guinn v. Sugar Transport of*
8    *the Northwest, Inc.* (E.D. Cal. 2017) 2017 WL 6513306 *7 (commonality not met
9    when an inquiry would have to be made as to why each individual did not take
10   their breaks at scheduled times); *Stiller v. Costco Wholesale Corp.* (S.D. Cal.
11   2014) 298 F.R.D. 611, 626 (certification denied where the policy at issue did not
12   automatically trigger liability); *White v. Starbucks Corp.,* (N.D. Cal. 2007) 497
13   F.Supp.2d 1080, 1089 ("employee must show that he was forced to forego his
14   meal breaks as opposed to merely showing that he did take them regardless of the
15   reason"); *Cortez v. Best Buy Stores* (C.D. Cal. Jan. 25, 2012) 2012 WL 255345
16   ("each employee would have to testify as to what she was told…by her specific
17   manager [regarding when to take breaks]"; *Lanzarone v. Guardsmark Holdings,*
18   *Inc.* (C.D. Cal. 2006) 2006 WL 4393465 *7 ("[i]f a claim is based substantially on
19   oral rather than written communications, class action is inappropriate as a matter
20   of law."); *Ugas v. H&R Block Enters., LLC* (C.D. Cal. July 9, 2012) 2012 WL
21   5230297 *5 (denying certification where individual inquiries into meal break
22   practices would predominate rather than written policies).

23       Plaintiffs also investigated a claim for unreimbursed business expenses
24   based on the personal cellphone use for business purposes. Plaintiffs claimed they
25   were forced to use their cellphones to communicate with supervisors for
26   scheduling purposes. Defendant argued this was more a matter of the employee's
27   convenience, rather than necessity and any such use was unreasonable. *See*
28

- 23 -

*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 568 (whether an expense is necessary depends on the reasonableness of the employee's choices).

Moreover, Plaintiffs' PAGA claims are based on the same alleged unlawful conduct as their class claims. Therefore, PAGA penalties could only be awarded if the factfinder agreed with Plaintiffs' theories of liability. Should the Court agree with any of Defendant's defenses to certification or on the merits, the potential exposure for PAGA would be reduced and any associated PAGA penalties would be extinguished, as penalties can only be awarded if the Court agrees with Plaintiffs' underlying allegations. Further, these penalties would be duplicative of the recovery from the underlying violations. Therefore, Plaintiffs recognize and reasonably believe the Court would significantly reduce any PAGA penalties if Defendant was determined to be the employer and found liable for the underlying Labor Code violations.

Although Plaintiffs remain confident in the strength of their claims and believe this case is suitable for certification on the claimed basis there are company-wide policies that Plaintiffs contend violate California law and uniformly affect all non-exempt employees, Defendant's counter-arguments raise uncertainties with respect to both class certification and success on the merits. As the California Supreme Court ruled in *Sav-On v. Superior Court* (2004) 34 Cal.4th 319, class certification is always a matter of the trial court's sound discretion. Decisions following *Sav-On* have reached different conclusions, with respect to certification of wage and hour claims. [9] Although remaining confident in the strengths of their claims, these factors led Plaintiffs to reasonably discount the potential damage claims. Bradley Dec. ¶ 12-13.

---

[9] *See, e.g.*, *Harris v. Superior Court* (2007) 154 Cal. App. 4th 164 (reversing decertification of class claiming misclassification and ordering summary adjudication in favor of employees), *review granted*, 171 P.3d 545 (2007) (not cited as precedent, but rather for illustrative purposes only); *Walsh v. IKON Solutions, Inc.* (2007) 148 Cal. App. 4th 1440  (affirming decertification of class claiming misclassification; *Aguilar v. Cintas Corp. No. 2* (2006) 144 Cal. App. 4th 121 (reversing denial of certification); *Dunbar v. Albertson's Inc.* (2006) 141 Cal. App. 4th 1422 (affirming denial of certification).

### i. Range of Exposure and Reasonable Discount

In light of the defenses and challenges discussed above, in considering the best interests of the class, Plaintiffs had to discount their exposure analysis. The total exposure for Plaintiffs' core non-PAGA claims were evaluated at approximately $5,000,000. In discounting their exposure, Plaintiffs had to consider the realistic potential of achieving and maintaining class certification and recovering under each of their theories. Based on the above strengths and challenges and considerable investigation and settlement negotiations, Plaintiffs and their experienced counsel conclude that the substantial sum of $1,225,000 Defendant will pay under the terms of the proposed settlement was in the best interests of the class. Bradley Dec. ¶ 11.

From the data Defendant provided, Plaintiffs were able to extrapolate the total shifts counts for the Class Period for the entire Class. Plaintiffs contend Defendant did not provide Class Members with duty-free meal and rest breaks. Assuming Plaintiffs achieved certification, proved these theories on the merits, and defeated all of Defendant's defenses, Class Members would be entitled to two premiums under Labor Code § 226.7. Accordingly, Plaintiffs calculated Defendant's *maximum* exposure under Plaintiffs' meal period and rest break claims is $33,336,314.

In addition, PAGA allows the private enforcement of certain California Labor Code sections relating to wage and hour violations. PAGA Section 2699(f)(2) provides a penalty of $100 per employee per pay period for an initial violation and $200 for each subsequent violation.

The California legislature enacted PAGA to "augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the Agency." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 383 (2014). This statute authorizes an employee to bring an action for "civil penalties on behalf of the state against his or her

employer for Labor Code violations committed against the employee and fellow employees . . . ." *Id.* at 360. The goal of a PAGA enforcement action is to impose civil penalties for Labor Code violations "significant enough to deter violations." *Id.* at 379.

Fundamentally, "a PAGA action is a statutory action in which the penalties available are measured by the number of Labor Code violations committed by the employer." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015). Under the general provisions of the PAGA scheme, 75% of the civil penalties recovered goes to the state while the remaining amount is given to the aggrieved employees. Lab. Code § 2699(i). Although PAGA penalties are mandatory and must be awarded by a court if a violation is found, the court "may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2); *see also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1213 (2008).

The LWDA has advised that courts should evaluate settlements of PAGA claims based on whether "the relief provided for under the PAGA [is] genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public." *O'Connor v. Uber Techs., Inc.*, No. 13-03826-EMC, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. Aug. 18, 2016); *Salazar v. Sysco Central Cal.*, No. 15-01758-DAD, 2017 WL 1135801, *2 (E.D. Cal. Feb. 2, 2017) (quoting the above passage). As courts defer to the agency's interpretation of a statute where authority has been delegated to that agency (*see New Cingular Wireless PCS, LLC v. Pub. Utilities Comm'n*, 246 Cal. App. 4th 784, 807 (2016)), the Court should analyze the PAGA settlement by focusing on whether the amount of civil penalties obtained is "genuine and meaningful" in light of PAGA's statutory purpose.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In assessing whether the amount of civil penalties is genuine and meaningful, the Court may balance the amount in penalties against the risks of further litigation. Based on information and evidence produced, Plaintiff's Counsel determined that, as of the time of the Parties' mediation with Mr. Kyriacou, statutory penalties would be calculated in the amount of $73,729,000 according to Labor Code 2699(f)(2).

After calculating Defendants' maximum exposure under PAGA, Plaintiff then discounted that exposure for settlement purposes to account for the risks of continued litigation, including: (i) the strength of Defendants' defenses on the merits; (ii) the risk of losing at trial; (iii) the risk that the Court would exercise its discretion under PAGA to significantly reduce the maximum civil penalties available by statute; (iv) the chances of a favorable verdict being reversed on appeal; and (v) the difficulties attendant to collecting on a judgment.

It should be noted that the PAGA gives the Court wide latitude to reduce the amount of civil penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have considered issues including whether the employees suffered actual injury from the violations, whether the defendant was aware of the violations, and the employer's willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011).

As Plaintiffs' PAGA claims are based on the same alleged unlawful conduct as their class claims, Plaintiffs' PAGA claims are subject to the same risks on the merits as Plaintiffs' class claims. Therefore, <u>PAGA penalties can only be awarded if the factfinder agrees with Plaintiffs' meal, rest period and wage statement theories of liability</u>. Additionally, Section 2699, subdivision (e)(2)

provides that in an action where an employee is seeking civil penalties under PAGA, "a court may award a lesser amount than the maximum penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary, oppressive, or confiscatory." The likelihood of the Court reducing the PAGA penalties awarded to Plaintiffs and the aggrieved employees – assuming liability is proven as to each of Plaintiffs' claims – is higher in this case where these same individuals may also be receiving money for the same unlawful conduct under the class claims. *See Avila v. Cold Spring Granite Co.* (E.D. Cal. Jan. 12, 2018) Case No. 1:16-cv-001533-AWI-SKO, 2018 U.S. Dist. LEXIS 6142 *17 ("Because the PAGA penalties sought are at least partially duplicative of penalties granted by the underlying Labor Code violations, *see, e.g.*, Cal. Lab. Code §§ 203, 226, 558(a), 1194.2, and because a Court has discretion in whether and in what amount to award PAGA penalties, *see* Cal. Lab. Code § 2699(e)(2), Plaintiff recognizes that the potential PAGA penalties are highly uncertain.").

Courts in the Ninth Circuit have observed that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery." *Telecomm. Corp. v. DirectTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The settlement here of $1,225,000 is fair, adequate, and reasonable when considering that it provides class members with a definite recovery and is in proportion to the strengths and challenges associated with achieving and maintaining certification on all claims, and establishing liability for all claims. For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—**or 0.21% of the maximum**—and stated that this reduction was warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations

- 28 -

were minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced award of a $150,000 penalty under PAGA. *Id.* at 529.

Likewise, in *Covidien*, the Court reduced the potential penalties by over 82%, awarding $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 WL 7563047 at *4; *see also Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the employer produced evidence that it took its obligations seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May 12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven, remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of California Labor Code § 226 as redundant with recovery on a class basis pursuant to California Labor Code § 226, directly);

## E.    NATURE AND METHOD OF NOTICE

### a.    Data to Administrator and Notice Mailing

The Class Database is due to ILYM within 10 calendar days of the Court granting preliminary approval of the proposed Settlement. *See* Agreement, Paragraph 18. After performing a search based on the National Change of Address Database to update and correct any known or identifiable address changes and performing any necessary skip traces, ILYM will mail the Notice to Class Members via first-class regular U.S. Mail within 20 days after preliminary approval of the Agreement. *See* Agreement, Paragraph 40. Putative Class Members will have 45 days from the mailing date of the Notice Packet to opt-out of or file objections to the Settlement. *See* Agreement, Paragraph 41(a) and (b).

### b.    The Notice Method Meets the Requirements of Rule 23

Rule 23(c)(2) requires that the notice inform prospective class members of

- 29 -

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3) generally requires the same concepts. "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Newberg, 2 *Newberg on Class Actions* §8.32 at 8-103. The proposed notice here, which is attached to the Agreement as **Exhibit A**, meets all of these requirements. *See* Bradley Decl., **Exhibit 1.** Thus, it is respectfully requested the Court order the Notice adequately notifies the class of the proposed Settlement.

In addition, this Notice describes the settlement of civil penalties pursuant to the PAGA, the division of the PAGA Payment between the LWDA and PAGA Releasees. The PAGA provides no notice procedures such as those that exist for class action settlements. *See Baumann v. Chase Inv. Servs. Corp.* (2014) 747 F.3d 1117, 1122 ("Unlike *Rule 23(c)(2)*, PAGA has no notice requirements for unnamed aggrieved employees, **nor may such employees opt out of a PAGA action**.").

**F. CONCLUSION**

Based on the foregoing, Plaintiffs respectfully requests that the Court grant preliminary approval of the proposed settlement, conditionally certify the Class, enter the proposed Preliminary Approval Order submitted herewith, and set a Final Approval Hearing.

Dated: June 12, 2020          **BAINER LAW FIRM**


By: */s/ Matthew R. Bainer*
Mathew R. Bainer, Esq.

Attorneys for Plaintiff Alma Haro

**BRADLEY/GROMBACHER, LLP**

By: _/s/ Marcus J. Bradley_
        Marcus J. Bradley, Esq.
        Kiley L. Grombacher, Esq.
        Lirit A. King, Esq.
        Attorneys for Plaintiff Meer Jan

**BLUMENTHAL NORDREHAUG
BHOWMIK  DEBLOUW LLP**

By: _/s/ Kyle Nordrehaug_
        Norman B. Blumenthal, Esq
        Kyle Nordrehaug, Esq.
        Attorneys for Plaintiff Michael Ignacio